**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **AUTUMN G.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 20-1206-JWL** |
| **KILOLO KIJAKAZI,**[2] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614

of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c (hereinafter the Act).  Finding

no error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's mental

impairments, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSI benefits on March 28, 2018.  (R. 10).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in considering mental impairments.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether there is a severe impairment(s), and whether the severity of the impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, the claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.     Evaluation of Plaintiff's Mental Impairments

Plaintiff claims the ALJ failed properly to assess the mental impairments of depression/bipolar disorder, attention deficit hyperactivity disorder, and anxiety. (Pl. Br. 8). In Plaintiff's view, this is so because Plaintiff went to the emergency room for mental impairments eight times in a three-year period and had three inpatient psychiatric admissions between May 2018 and February 2019; the mental healthcare provider opined disabling limitations; and the ALJ's findings otherwise are not supported by substantial evidence. Id. Plaintiff argues the ALJ erroneously misapprehended, discredited, or credited record evidence in various ways. Id. at 9-17. The Commissioner argues the ALJ applied the correct standard and his findings are supported by substantial evidence in the

4

record.  (Comm'r Br. 8-11).  She argues the ALJ correctly evaluated the medical opinions

and prior administrative medical findings[3] and that substantial evidence supports those

findings.  (Comm'r Br. 12).  She argues Plaintiff wants the court to look at the same

evidence the ALJ reviewed, reweigh it, and find the ALJ made the wrong findings.  Id.

She points to record evidence supporting the ALJ's findings.  Id. at 13-14.  In Reply,

Plaintiff argues Plaintiff is not asking the court to reweigh the evidence but is asking the

court "to consider if the record compels a different conclusion."  (Reply 2).

## A.    The ALJ's Findings

The ALJ found Plaintiff has the severe medically determinable mental

impairments of depression/bipolar disorder, attention deficit hyperactivity disorder, and

anxiety.  (R. 12).  At step three he found that Plaintiff has a moderate limitation in each

of the four broad mental functional areas but does not meet or medically equal the

severity of any Listed mental impairment.  Id. at 12-13.  He found that Plaintiff has the

following mental functional limitations:   "[S]he[4] is limited to simple, routine, repetitive

tasks with occasional interaction with coworkers and no interaction with the general

---

[3] The opinions expressed by state agency physicians and psychologists during the
consideration and reconsideration levels of agency review are properly called "prior
administrative medical findings."  20 C.F.R. § 416.913(a)(4) (2019).  But they are
considered pursuant to the same standards as medical opinions, id. § 416.920c, and for
simplicity the court hereinafter refers to them as medical opinions.

[4] The parties recognize that Plaintiff is a biological female, but "has identified as
transgender since age 14 and prefers the pronouns 'he/him.'"  (Pl. Br. 1, n.1) see also
(Comm'r Br. 1, n.1).  In their Briefs, the parties refer to Plaintiff using "he" or "him."
Neither Plaintiff nor her attorney informed the ALJ of this preference and the ALJ
addressed Plaintiff in the decision as "claimant," "she," and "her."  (R. 10-18).

public.  She retains the ability to accept supervision on a basic level."  Id. at 14 (finding
no. 4, bold omitted).  He found Plaintiff's "statements concerning the intensity,
persistence and limiting effects of [] symptoms are not entirely consistent with the
medical evidence and other evidence."  (R. 14).  He noted:  "The medical evidence of
record does reflect a history of treatment for depression, bipolar disorder, attention deficit
hyperactivity disorder, and anxiety; however, the severity and limiting effects asserted by
the claimant are inconsistent with the evidence of record."  Id.

The ALJ summarized Plaintiff treatment, id. at 15-16, and provided an explanation
of his conclusions therefrom:

> Overall, this evidence is not suggestive of her having disabling limitations.
> As noted above, generally her providers documented moderate ongoing
> abnormalities in her mental health functioning.  She exhibited some
> symptom exacerbations, but with short inpatient treatments her symptoms
> were controlled.  She never required extended inpatient care.  Notably, she
> has not required inpatient care since January 2019.  Recent treatment
> records from her providers did not indicate she was experiencing any
> increased symptoms that were not adequately treated with routine care.  She
> alleged ongoing hallucinations and suicidal ideations, but Dr. Neufeld did
> not document these symptoms during his examination.  Similarly, they
> were only documented a few times during her treatment course.  Generally,
> her treatment notes indicated that she was not experiencing these increased
> symptoms.  Thus, the evidence as a whole does not reflect signs and
> symptoms of a severity to preclude realistic thinking, adequate focus for
> simple tasks or appropriate interaction on a limited basis.

Id. at 16.

In accordance with the new regulation controlling the evaluation of medical
opinions and prior administrative findings of fact, the ALJ explained his evaluation of the
persuasiveness of those opinions and findings.  20 C.F.R. § 416.920c.

The state agency psychological consultants opined that the claimant could perform one to two step tasks, she could have no contact with the public and occasional contract [sic] with co-workers and she was able to work in a setting that does not require travel from her primary worksite and does not require independent workplace planning (Exhibits 1A, 3A).  This opinion is found to be persuasive for the following reasons.  It is supported by a detailed narrative explaining the evidence relied on in making the determination.  It is consistent with the examinations in the record that show few deficits in her functioning.  It is consistent with the fact she is able to engage in numerous activities of daily living, which shows she can complete tasks and have social interaction.

The opinions of Anne Lopez, LCSW and Lisa Russel, ARPN, are found to not be [sic] persuasive (Exhibits 13F, 15F).  They did not provide a detailed narrative to support their opinions.  Their opinions are inconsistent with their own treatment notes.  They did not document any extreme or marked limitations in her functioning.  They do not address the claimant's non-compliance with treatment.  Additionally, they are inconsistent with the fact she is able to engage in numerous activities of daily living, which indicates she is not significantly limited by her impairments.

The undersigned finds the opinion of Dr. Neufeld to be persuasive (Exhibit 5F).  He supported his opinion with a detailed narrative explaining the evidence relied on in forming his opinion.  His opinion is consistent with his examination report that showed only moderate abnormalities as documented above.  Additionally, his opinion is consistent with the fact she is able to engage in numerous activities of daily living, which shows she can complete tasks and have social interaction.

(R. 16-17).

### B.     Analysis

Plaintiff's asking the court "to consider if the record compels a different conclusion" (Reply 2) is, in fact, asking the court to reweigh the ALJ's decision and substitute its judgment for that of the Commissioner, because Plaintiff does not demonstrate why the evidence cannot support the ALJ's findings or compels a finding of disability, but asks the court to reweigh the evidence to see if (in the court's judgment

substituted for the ALJ's judgment) it compels a different conclusion.  Plaintiff's

argument misunderstands both the beginning point for the court's judicial review and the

fact that reasonable individuals reasonably view the same evidence differently because

they assign different weight to the same facts and view different evidence or types of

evidence to be of greater or lesser importance.  Because the beginning point for judicial

review of the Commissioner's decision in a Social Security disability case is the final

decision in that case and the findings and rationale of that decision, a plaintiff must do

what Plaintiff has failed to do here—demonstrate why the record evidence <u>cannot</u> support

the ALJ's findings or <u>compels</u> a finding of disability.

      Plaintiff's reliance on emergency room visits and hospitalizations to suggest the

ALJ should have found Plaintiff disabled ignores the ALJ's consideration of that

evidence.  (R. 15).  The ALJ acknowledged that at times Plaintiff exhibited moderate

abnormalities including irritability, depression, and limited insight and judgment.  But he

also noted:

> no other abnormalities were documented on a <u>regular</u> basis.  She was alert
> and oriented during her examinations.  She <u>consistently</u> exhibited good eye
> contact.  She <u>consistently</u> exhibited normal speech.  Her medication
> provider <u>consistently</u> noted that she was not experiencing any suicidal
> ideations or any psychosis.   Similarly, her therapy provider documented
> moderate abnormalities in her functioning.  <u>At times</u>, she exhibited a
> depressed mood and irritability.  She also exhibited some anxiousness and
> impaired insight.  However, other findings were nearly normal.  She
> exhibited no hallucinations or suicidal ideations.  She was also alert and
> oriented with good eye contact.  <u>Overall</u>, these findings are not suggestive
> of her having disabling limitations.  Notably, her providers did not
> document significant <u>ongoing</u> hallucinations or delusions.  Nor did she
> exhibit frequent <u>ongoing</u> suicidal ideations.

(R. 15) (extensive record citations omitted) (emphases added).  Immediately thereafter, the ALJ noted three inpatient psychiatric hospitalizations.  Id. (June 2-5, 2018, 4 days, R. 646); (Sept. 20-24, 2018, 4 days, R. 741); (Jan. 25-26, 2019, 2 days, R. 794).  He noted that each time Plaintiff was admitted she exhibited suicidal ideation and other reported symptoms such as poor impulse control, hallucinations, or limited insight and judgment. (R. 15).  He stated his conclusion:

> While she did require some inpatient care, she required only short inpatient stays to become stable.  Notably, she only required three inpatient stays during the relevant period.  Additionally, her treatment notes indicate that she required inpatient care when she was not fully compliant with her prescribed medications and therapy regimen (Exhibit 17F, pp. 3, 48, 114, 124 (R. 647, 692, 758, 768)).  As such, this evidence is not suggestive of her impairments imposing disabling limitations on her functioning.

Id.  Plaintiff has not shown the evidence compels a different finding.  Plaintiff correctly argues "Neither frequent ongoing suicidal ideation nor significant ongoing hallucinations or delusions … are required for a finding of disability."  (Pl. Br. 12-13).  However, as the ALJ points out, the fact Plaintiff has such symptoms only infrequently, they stabilize quickly with treatment, and at their worst in the relevant period they have resulted in only three short hospitalizations, is evidence they do not impose disabling limitations.

Plaintiff takes several lines of attack on the ALJ's evaluation of her allegations of symptoms resulting from her mental impairments.  First, Plaintiff argues the ALJ's finding "her treatment notes indicate that she required inpatient care when she was not fully compliant with her prescribed medications and therapy regimen" (R. 15) (citing R. 647, 692, 758, 768), is erroneous because the evidence cited does not indicate noncompliance.  (Pl. Br. 10).  As Plaintiff suggests, the record cited does not

affirmatively state Plaintiff was noncompliant with medications or with attending to her therapy or to her therapy assignments, but it might reasonably be viewed as suggesting Plaintiff was "not fully compliant," as the ALJ found.  As relevant to this issue, the first treatment note cited states, "This early afternoon (1215) she is only minimally cooperative during the interview, ending the interview by saying 'let me sleep' and turning away from this writer."  (R. 647).  The note also states Plaintiff is compliant with medications and psychiatric services.  Id.  Despite indicating technical compliance, this note indicates Plaintiff was not compliant with treatment at that particular time.  The next note cited states, "We will also work on trying to build up the patient's ability to accept support services that will hopefully help with compliance and function better in the community."  (R. 692).  It states, "Discussed with the patient the risks, benefits and alternative treatment options, noncompliance risks with psychotropics," and continues, "The patient was encouraged to work on assignments related to relapse prevention, safety plan and coping skills."  Id.

The last two treatment notes contain portions of the discharge summaries from Plaintiff's September 2018 hospitalization, and contain identical statements of Plaintiff's current status on the discharge day.  (R. 758, 768).  The notes state, in part, "patient has been adherent to medications as prescribed," "agreed to keep outpatient follow up appointments as scheduled and recommended," "[d]iscussed issues on relapse prevention, importance of compliance with medications and follow-up appointments," "[d]iscussed … benefits of compliance," "[e]ncouraged to stop using any street drugs, avoid any triggers and maintain sobriety."  Id.  As the ALJ found, this record evidence might

reasonably be seen as suggesting the providers' view that Plaintiff had not been "fully

compliant with her prescribed medications and therapy regimen." Id. at 15.

Plaintiff next argues that even if the record suggests noncompliance, "the ALJ still

erred by failing to consider this noncompliance under the Frey test" because he used the

evidence of noncompliance to discount Plaintiff's allegations.  (Pl. Br. 11-12) (citing

Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987) and Qualls v. Apfel, 206 F.3d 1368,

1372 (10th Cir. 2000) and arguing that Qualls applies when the ALJ is only considering a

claimant's attempts to obtain relief from symptoms where treatment has not been

prescribed but Frey applies "when the ALJ relies on a failure to follow prescribed

treatment when evaluating the credibility of a claimant's allegations.").  The court

acknowledges the case law cited by Plaintiff but finds neither of those situations

applicable here.  As Plaintiff suggests, the ALJ was not addressing Plaintiff's attempts to

obtain relief from symptoms, but neither was he addressing the consistency of Plaintiff's

allegations of symptoms resulting from her mental impairments.[5]  Rather, he was

pointing out that even though the evidence suggests Plaintiff's mental healthcare

providers were concerned Plaintiff was not fully compliant with her treatment regimen

when she became hospitalized, the hospitalizations were short and infrequent and did not

demonstrate disabling limitations.  Moreover, and perhaps most importantly, the

Commissioner points out she issued a new SSR 18-3p providing guidance about how the

---

[5] Plaintiff uses the term "credibility," which was the term used in the cases cited.
Although that term is no longer used, the applicable regulation never used that term and
the procedure for evaluating a claimant's allegations of symptoms has not significantly
changed.  20 C.F.R. § 416.929 (2019); Soc. Sec. Ruling (SSR) 16-3p.

agency considers a failure to follow prescribed treatment in disability claims.  SSR 18-3p

explains the agency "will determine whether an individual has failed to follow prescribed

treatment only if all three [of certain specific] conditions exist."  2018 WL 4945641, *2

(SSA Oct. 2, 2018).  The first prerequisite condition is "[t]he individual is otherwise

entitled to disability … benefits under titles II or XVI of the Act."  Id.  The SSR explains:

> We only perform the failure to follow prescribed treatment analysis
> discussed in this SSR after we find that an individual is entitled to disability
> or eligible for statutory blindness benefits under titles II or XVI of the Act,
> regardless of whether the individual followed the prescribed treatment.  We
> will not determine whether an individual failed to follow prescribed
> treatment if we find the individual is not disabled, not blind, or otherwise
> not entitled to or eligible for benefits under titles II or XVI of the Act.

Id. 2018 WL 4945641 at *3.  Here, the ALJ found even when Plaintiff is not following

prescribed treatment Plaintiff is not disabled and, therefore, the ALJ was not required to

perform the failure to follow prescribed treatment analysis.

Plaintiff's final attack on the ALJ's evaluation on Plaintiff's allegations of

symptoms is the claim that he failed to acknowledge Plaintiff's limitations in his

evaluation of Plaintiff's daily activities.  However, the decision demonstrates otherwise:

> [T]he claimant's activities of daily living are not indicative of her having
> disabling limitations from her impairments.  She is able to engage in a
> fairly normal level of daily activities.  She is able to cook and perform
> household chores.  She is able to spend a significant amount of time playing
> video games and uses social media.  She is able to spend time with friends.
> She was able to attend a several daylong convention.  She is able to babysit
> for her young nephew. She is able to go to the pool. Overall, the claimant's
> descriptions of her daily activities are essentially normal.  Her activities are
> not limited to the extent one would expect, given the complaints of
> disabling symptoms and limitation that preclude her from work activities.
> Although the claimant may not be able to engage in all of the activities that
> she did in the past and it may take her longer to perform the tasks, she is

> more active than would be expected if all of her allegations were consistent
> with the record [allegations].

(R. 16) (emphases added).  As emphasized above, the ALJ acknowledged Plaintiff

alleged limitations in her ability to perform daily activities.  Plaintiff performed each of

the activities discussed by the ALJ and does not allege otherwise, but argues the ALJ did

not accord sufficient weight to the limitations alleged in performing those activities.

Plaintiff argues the activities cited by the ALJ do not equate with full-time

employment.  (Pl. Br. 15) (citing Pennington v. Chater, No. 96-5177, 1997 WL 297684,

at *4 (10th Cir. June 5, 1997); Otte v. Berryhill, No. 18-2006-JWL, 2018 WL 5263515, at

*4-5 (D. Kan. Oct. 23, 2018); Fuller v. Astrue, 766 F. Supp. 2d 1149, 1163 (D. Kan. Jan.

21, 2011)).  Plaintiff is correct that the activities cited do not equate to full-time work.

However, Plaintiff alleges an inability to perform work due to limitations caused by

mental impairments and the activities cited require many of the same mental abilities

required by work within the RFC assessed.  The claimant's in Pennington and Otte had

disabling physical impairments which also affected their mental abilities.  In Fuller, the

claimant was "experiencing psychological difficulties," but the difficulties were "related

to the constraints and consequences of changes in his physical condition."  766 F. Supp.

2d at 1162.  Moreover, that court found error in the ALJ's discounting a psychologist's

medical opinion as inconsistent with the claimant's activities of daily living when the

ALJ did not explain how the activities "are inconsistent with Plaintiff's physical and

mental impairments combining in the form of a Pain Disorder and precluding work for a

40–hour week."  Fuller, 766 F. Supp. 2d at 1163 (emphases in original).  Here on the

other hand, the impairments found are mental only, which the ALJ found not disabling, and explained that "the evidence as a whole does not reflect signs and symptoms of a severity to preclude realistic thinking, adequate focus for simple tasks or appropriate interaction on a limited basis;" that "she is able to engage in numerous activities of daily living, which shows she can complete tasks and have social interaction;" and that "she is able to engage in numerous activities of daily living, which indicates she is not significantly limited by her impairments."  (R. 16-17).

## III.    Medical Opinions

Plaintiff also argues, "The ALJ's failure to appropriately assess [Plaintiff]'s mental impairments tainted his evaluation of the medical opinions."  (Pl. Br. 15). Plaintiff argues that while the opinions of the state agency psychological consultants and of the examining psychologist may be consistent with their own examinations and with the medical records available to them, they are not consistent with the longitudinal record.  Id.  Plaintiff argues that the medical evidence received after the opinions found persuasive by the ALJ show a decline in Plaintiff's functioning.  Id. at 16.  Plaintiff acknowledges that the question here "is whether substantial evidence supports the ALJ's finding of the opinion's persuasiveness based on the rationale set forth by the ALJ."  Id. at 17 (citing Monique M. v. Saul, No. 19-1345-JWL, 2020 WL 5819659, at *6 (D. Kan. Sept. 30, 2020); and Melanie H. v. Saul, No. 20-1028-JWL, 2020 WL 6262193, at *7-8 (D. Kan. Oct. 23, 2020)).  But Plaintiff argues, based on the allegations of error in the evaluation of mental impairments discussed above, that "the ALJ's [persuasiveness] conclusions are not supported by the record and, instead, represent a mischaracterization

and misunderstanding of the record." (Pl. Br. 17). Plaintiff asserts, "A reasonable mind would not accept the ALJ's rationale as sufficient to support his ultimate conclusion." Id.

The Commissioner argues the ALJ applied the correct legal standard. (Comm'r Br. 12). She argues, "Plaintiff does not challenge the ALJ's finding that [Nurse Russell's] opinion was unpersuasive, and neither mentions nor challenges the ALJ's similar finding as to social worker Ms. Lopez's opinion," and thereby waived that argument. Id. She argues that in any case the ALJ's persuasiveness findings are supported by the record evidence. Id. at 13. She cites to record evidence supporting the ALJ's persuasiveness findings. Id. at 13-14. Plaintiff's Reply Brief argues the state agency psychologists' opinions and the psychologist's report of examination "were inconsistent with the record as a whole" and "inconsistent with treatment records documenting a fluctuation of symptoms reflected in [Nurse Russell's] January 2019 medical opinion indicating marked and extreme limitations." (Reply 1). Plaintiff again asserts the ALJ's RFC assessment "tainted the ALJ's consideration of the medical opinions," id., but does not point to specific error in the ALJ's persuasiveness findings.

To the extent Plaintiff relies on alleged errors in the ALJ's RFC assessment and evaluation of Plaintiff's mental impairments to suggest error in the medical opinions, that reliance fails because the court found no such errors in Section II above. Nevertheless, the court will review the ALJ's evaluation of the medical opinions.

Plaintiff acknowledges that the new regulations apply to evaluation of the medical opinions in this case, and that the most important factors in determining persuasiveness are supportability and consistency. (Pl. Br. 15, 17) (see also 20 C.F.R. § 419.920c

(2019)).  Therefore, as Plaintiff also acknowledges, the question remaining for the court "is whether substantial evidence supports the ALJ's finding of the opinion's persuasiveness based on the rationale set forth by the ALJ."  Id. at 17.  The court finds that it does.

The ALJ found the opinion of the state agency consultants persuasive because it is (1) "supported by a detailed narrative," (2) "is consistent with the examinations in the record that show few deficits in her functioning," and is (3) "consistent with the fact she is able to engage in numerous activities of daily living, which shows she can complete tasks and have social interaction."  (R. 16).  Plaintiff does not object to reason (1) above and the court finds it supported by the evidence.  (R. 74-75, 76-78, 90-92, 93-95). Findings (2) and (3) were considered by the court in Section II above and no error was found in the ALJ's consideration.

The ALJ found Dr. Neufeld's opinion persuasive because (1) it contained a detailed narrative, (2) it "is consistent with his examination report that showed only moderate abnormalities," and (3) it "is consistent with the fact she is able to engage in numerous activities of daily living, which shows she can complete tasks and have social interaction."  (R. 17).  As with the opinions of the state agency psychological consultants, Plaintiff does not object to reason (1) for finding Dr. Neufeld's opinion persuasive and the court finds it supported by the evidence.  (R. 468-70).  Likewise, reasons (2) and (3) were considered by the court in Section II above and no error was found in the ALJ's consideration.

The ALJ also considered the opinions of Nurse Russell an Ms. Lopez:

> The opinions of Anne Lopez, LCSW and Lisa Russel, ARPN, are found to not be [sic] persuasive (Exhibits 13F, 15F (R. 589-91, 601-03)).  They did not provide a detailed narrative to support their opinions.  Their opinions are inconsistent with their own treatment notes.  They did not document any extreme or marked limitations in her functioning.  They do not address the claimant's non-compliance with treatment.  Additionally, they are inconsistent with the fact she is able to engage in numerous activities of daily living, which indicates she is not significantly limited by her impairments.

(R. 17).  As the Commissioner argues, Plaintiff did not oppose the ALJ's finding these opinions not persuasive and has thereby waived that argument.  Anderson v. Dep't of Labor, 422 F.3d 1155, 1174, 1182 n.51 (10th Cir. 2005); Headrick v. Rockwell International, 24 F.3d 1272, 1277–78 (10th Cir.1994).  Nevertheless, the record supports the reasons the ALJ gave for finding these opinions not persuasive.

Plaintiff has shown no error in the Commissioner's decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 9, 2021, at Kansas City, Kansas.


s:/  *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**

17